UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No. 18cr 10290 |
| | ) | |
| | ) | VIOLATIONS: |
| v. | ) | |
| | ) | Embezzlement from an Agency |
| | ) | Receiving Federal Funds |
| DAVID WILSON, | ) | (18 U.S.C. § 666(a)(1)(A)) |
| | ) | |
| Defendant. | ) | Aiding and Abetting |
| | ) | (18 U.S.C. § 2) |
| | ) | |
| | ) | Forfeiture Allegation |
| | ) | (18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. |
| | ) | § 2461(c)) |

## INDICTMENT

The Grand Jury charges that:

## General Allegations

At all times relevant to this Indictment:

1.      Troop E was an operational division of the Massachusetts State Police ("MSP"),

the law enforcement agency for the Commonwealth of Massachusetts.   Among other duties,

Troop E was primarily responsible for enforcing criminal law and traffic regulations on

Interstate-90, the Massachusetts Turnpike ("I-90"), which spans the Massachusetts/New York

border to the Boston Harbor.   Troop E headquarters was located in South Boston, and

additional Troopers within Troop E were stationed at four barracks located in Weston, Charlton,

Westfield, and near the Boston Tunnels.

2.      In addition to their salary for a regular 8-hour work shift, Troopers within Troop

E were able to earn overtime pay equivalent to 1.5 times their regular hourly pay rate for various overtime assignments.   Beginning by at least January 2016, Troop E Troopers could earn overtime pay by signing up for and working selective enforcement initiatives known as "AIRE" (Accident and Injury Reduction Effort).   The objective of the AIRE program was to reduce accidents, crashes, and injuries on I-90 through an enhanced presence of MSP Troopers patrolling I-90 and targeting vehicles traveling at excessive speeds.

3.     All AIRE shifts were four hours long and were organized by letter according to a specific shift: A-AIRE from 7:30 a.m. to 11:30 a.m.; B-AIRE from 11:00 a.m. to 3:00 p.m.; C-AIRE from 3:30 p.m. to 7:30 p.m.; and D-AIRE for 7:00 p.m. to 11:00 p.m.   Prior to each AIRE shift, Troopers were deployed to a particular sector of I-90.

4.     To earn AIRE overtime pay, Troopers were required to work the duration of the 4-hour AIRE shift, and conduct traffic enforcement on I-90 by issuing summonses, citations, and warnings during the shift.   In the event that inclement weather rendered Turnpike traffic stops unsafe during an AIRE shift, Troopers were to contact the Troop E desk officer in order to be re-deployed to another sector of I-90, as necessary.

5.     As part of the AIRE overtime shift duties, Troopers were required to truthfully and accurately report, among other things, the date and time of the shift worked, the sector of deployment, and the traffic citations issued during the AIRE shift.

6.     DAVID WILSON ("WILSON") was a Lieutenant in the State Police assigned to Troop E.   In or about 2016, WILSON's total MSP compensation was approximately $259,475, which included approximately $102,062 in overtime pay, a portion of which included pay for AIRE overtime shifts.

7.     As a lieutenant in Troop E, WILSON regularly received Troop E memorandums, policies, and protocols that instructed Troop E personnel as to AIRE assignment requirements, including the 4-hour AIRE shift duration requirement, and paperwork reporting responsibilities.

### The MSP Received Federal Funds

8.     The United States Department of Transportation ("DOT") was an agency of the United States that provided hundreds of thousands of dollars in funding on a yearly basis to law enforcement authorities that enforce traffic regulations on public roadways, including the MSP.

9.     For the calendar year 2016, the MSP received annual benefits from the DOT in excess of $10,000.   DOT provided these funds through numerous federal grants.

### The Defendant's Fraud Scheme

10.     In or about 2016, WILSON signed up for and received overtime pay for more than 170 AIRE overtime shifts.   On a regular basis during this period, WILSON purposefully departed his AIRE overtime shift from one to three hours early and thus did not work the entire 4-hour shift.   On several occasions, WILSON signed up for and received AIRE overtime pay without showing up to work for the given AIRE shift at all.

11.     In order to conceal the fraud, WILSON fabricated and submitted fraudulent traffic citations to create the appearance that he had: (i) worked a 4-hour AIRE shift; and (ii) made traffic stops and issued traffic citations during a given AIRE overtime shift, when, in fact, he had not.   WILSON also made numerous false statements to the MSP on internal MSP paperwork representing to the MSP that WILSON had worked AIRE overtime hours that he had not. WILSON made additional false statements in the MSP payroll system, representing to the MSP that WILSON had worked AIRE and overtime hours that he had not.

12.     From at least as early as in or about January 2016 through in or about December 2016, WILSON caused the MSP to pay in excess of $5,000 in AIRE overtime pay to WILSON for AIRE overtime hours that WILSON did not actually work.

## COUNT ONE
(Embezzlement from an Agency Receiving Federal Funds –
18 U.S.C. §§ 666(a)(1)(A); Aiding and Abetting – 18 U.S.C § 2 )

13.     Paragraphs 1 through 12 of the Indictment are incorporated by reference herein.

14.     From at least in or about January 2016 to in or about December 2016, in the

District of Massachusetts,

### DAVID WILSON

defendant herein, being an agent of an organization, namely, the MSP, embezzled, stole,

obtained by fraud and otherwise without authority knowingly converted to the use of a person

other than the rightful owner and intentionally misapplied, property valued at $5,000 or more,

that was owned by, and was under the care, custody, and control of the MSP, an organization

that received in excess of $10,000 in federal program benefits, funded by DOT, in any one-year

period, that is, between in or about January 2016 and in or about December 2016.

All in violation of Title 18, United States Code, Sections 666(a)(1)(A) and 2.

## FORFEITURE ALLEGATIONS
### (18 U.S.C. § 981(a)(1)(C) & 28 U.S.C. § 2461(c))

1.      Upon conviction of the offense charged in Count One of this Indictment, the

defendant,

### DAVID WILSON

shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c),

any property, real or personal, that constitutes, or is derived from, proceeds traceable to the

commission of the offense.

2.      If any of the property described in paragraph 1 hereof as being forfeitable

pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), as a result of any act or omission

of the defendant --

        a.      cannot be located upon the exercise of due diligence;

        b.      has been transferred to, sold to, or deposited with a third party;

        c.      has been placed beyond the jurisdiction of this Court;

        d.      has been substantially diminished in value; or

        e.      has been commingled with other property which cannot be divided
                without difficulty;

it is the intention of the United States, pursuant to 28 U.S.C. § 2461(c), incorporating 21 U.S.C.

§ 853(p), to seek forfeiture of all other property of the defendant up to the value of the property

described in paragraph 1 above.

All pursuant to Title 18, United States Code, Section 981 and Title 28, United States Code, Section 2461(c).

A TRUE BILL

*Glenda Duclos*

FOREPERSON OF THE GRAND JURY

Mark Grady
Dustin Chao
Neil Gallagher
Assistant United States Attorneys

DISTRICT OF MASSACHUSETTS; August 22, 2018.

Returned into the District Court by the Grand Jurors and filed.

DEPUTY CLERK      @ 3:50 PM

8/22/18